UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| THE GATHERING SPOT, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | No. 3:22-CV-7-TRM-JEM |
| ) | |
| THE GATHERING SPOT AT ) | |
| BURLINGTON VILLAGE LLC and ) | |
| TERRI CADE-HILL, ) | |
| ) | |
| Defendants. ) | |

## REPORT AND RECOMMENDATION

This case is before the undersigned pursuant to 28 U.S.C. § 636, the Rules of this Court, and Standing Order 13-02, as well as referral of the Chief District Judge [Doc. 38].

Upon review of Plaintiff The Gathering Spot, LLC's motion for default judgment and Defendant The Gathering Spot at Burlington Village LLC's and Terri Cade-Hill's motion to set aside entry of default and motion for extension of time to file their answer, Chief District Judge McDonough granted Defendants' motion to set aside entry of default and denied Plaintiff's motion for default judgment [Doc. 38]. In doing so, he ordered Defendants to "pay Plaintiff reasonable attorney's fees and expenses incurred with its efforts to obtain and maintain a default" [*Id*. at 7–8]. He referred the issue of attorney's fees and expenses to the undersigned in the event the parties were unable to reach an agreement about an amount on or before September 30, 2022 [*Id*. at 8].

The parties did not reach an agreement and now before the Court is Plaintiff's Memorandum of Law in Support of Request for Its Reasonable Attorney's Fees and Expenses [Doc. 44], Defendants' response [Doc. 46], and Plaintiff's reply [Doc.49]. The issue is ripe for review, and for the reasons explained below, the undersigned **RECOMMENDS** that the Chief

District Judge **GRANT IN PART AND DENY IN PART** Plaintiff's request [**Doc. 44**] and award Plaintiff $27,705.50 in attorney's fees and $2,565.60 in expenses.

I.  BACKGROUND AND POSITIONS OF THE PARTIES

Plaintiff is a private social club in Atlanta, Georgia, that "features a restaurant and event space designed to provide its members with opportunities to socialize, experience cultural events, and collaborate professionally" [Doc. 44 p. 1 (citing Doc. 1 ¶¶ 10–11)]. Defendant Terri Cade-Hill is the founder and owner of Defendant The Gathering Spot at Burlington Village LLC, an event space in Knoxville, Tennessee [Doc. 1 ¶¶ 24–25]. Plaintiff commenced this action on January 5, 2022, against Defendants for trademark infringement under the Lanham Act, 15, U.S.C. §§ 1116, 1125 [Doc. 1 p. 3].

Following commencement of this action, Plaintiff spent four months attempting to serve Defendants twenty-two times [Doc. 38 p. 4]. The details of Plaintiff's attempt in achieving service are outlined in previous orders of the Court and will not be repeated here [*See* Doc. 38 pp. 2, 4; Doc. 21 pp. 1–3; Doc. 17 pp. 1–5]. After achieving service, Defendants "failed to file an answer or otherwise respond within the time permitted under the federal rules" [Doc. 38 p. 2]. Plaintiff, therefore, applied for entry of default judgment against each Defendant, and the Clerk of Court entered default against each Defendant on August 8, 2022 [*Id.* (citing Docs. 24, 25, 30, 31)]. Plaintiff moved for default judgment, and Defendants moved to set aside default and for an extension of time to file an answer [*Id.* (citing Docs. 32, 33, 36)].

In denying Plaintiff's motion for default judgment, Chief District Judge McDonough found Defendants' behavior was "willful" [*Id.* at 4]. He said that this litigation "hardly came 'as a shock' to Defendants" and Defendants "had notice of this lawsuit for eleven months before default was entered yet avoided service instead of planning their response" [*Id.* at 4–5]. Further, "Defendants'

counsel ha[d] been aware of this lawsuit since at least March 2022, and aware of the alleged infringement since December 28, 2021" [*Id*. at 5]. But Chief District Judge McDonough determined that the prejudice claimed by Plaintiff—that is, the "great expense it incurred in attempting to serve Defendants"— could be mitigated "by ordering Defendants to pay all fees and expenses associated with the default issues" [*Id*.]. Hence, he ordered Defendants to "pay Plaintiff reasonable attorney's fees and expenses incurred with its efforts to obtain and maintain a default" [*Id*. at 7–8].

Plaintiff now seeks for the Court to award it $38,147.00 in attorney's fees and $2,565.60 in expenses, for a total of $40,712.60 [Doc. 44 p. 9].[1] In support of this request, Plaintiff submits the Declaration of Amanda G. Hyland, time records of Plaintiff's counsel, a copy of Plaintiff's counsel's expense report, correspondence between Plaintiff's counsel and Defendants' counsel related to Defendants' refusal to offer more than $500 for attorneys' fees, and "excerpts of the survey results from the AIPLA 2021 Report of the Economic Survey showing the average billing rates for intellectual property litigation" [Docs. 44-1, 44-2, 44-3, 44-4]. In addition, Plaintiff requests that the Court stay this litigation for sixty days, pending Defendants' payment of the fees and costs awarded by this Court [Doc. 44 at 9]. And "[i]f Defendants fail to comply with the Court's Order to pay the fees and costs, Plaintiff requests that the Court strike Defendants' Answer and enter default judgment pursuant to its inherent authority" [*Id*.].

Defendants oppose Plaintiff's request [Doc. 46]. Defendants assert that the Chief District Judge awarded fees for the motion for default and Plaintiff seeks more than that, specifically "fees

---

[1] Plaintiff further requested fees associated with the filing of its memorandum and reply in support of its request for fees and expenses and indicated that it would supplement its calculations upon submission of its reply brief [Doc. 44 p. 9]. Plaintiff did not do so [*see* Doc. 49], so the undersigned does not consider this request.

3

from activities prior to and subsequent to its motion for default" [*Id*. at 1]. Defendants believe that "the correct assessment of fees and expenses occurs following the expiration of the initial time for a response/answer had expired following service of process" [*Id*. at 1–2]. Further, Defendants object to the "fee structure used by Plaintiff" because it is "based upon the fact of trademark litigation requiring specialized counsel[, but] the parties have not even gotten to any branch of litigation regarding the underlying issues" [*Id*. at 2]. Defendants also state that any time claimed for research related to the rules of procedure of this Court is "overbroad" [*Id*.]. As for a stay, Defendants object because it would need "some type of extensive payment structure to even fund the $3,000 offer that Defendants proposed in its attempts to reach an agreed amount with Plaintiff" and assert that forcing it to "find" the payment within sixty days "could easily doom any chance that Defendants would [have to defend the lawsuit and] get its business off the ground" [*Id*. at 3]. They ask that the Court award no more than $5,000.00 in attorney's fees and expenses [*Id*.].

In reply, Plaintiff asserts that its fees and expenses related to its efforts to obtain a default must include efforts to serve Defendants [Doc. 49 p. 2]. Plaintiff also asserts that Defendants have known the identity of Plaintiff's counsel since the outside of their evasion of service, yet continued to do so and they "must now bear the consequences of their conduct" [*Id*. at 4]. According to Plaintiff, Defendants provided no reason why Plaintiff's attorney's fees structure is excessive, no example of excess time that was expended, and no example of a task that was performed that they claim is objectionable [*Id*. at 5]. The "blanket objections," Plaintiff asserts, are "meritless and should be overruled" [*Id*.]. Finally, Plaintiff argues that "[i]n cases where bad faith has been established, the party's ability to pay is not typically considered" [*Id*. (citing cases)].

## II. ANALYSIS

Given the Chief District Judge's Order, the only issue for the undersigned to decide is the "reasonable [amount of] attorney's fees and expenses incurred with [Plaintiff's] efforts to obtain and maintain a default" [Doc. 38 pp. 7–8]. But the parties dispute the scope of what should be considered in deciding that amount. Plaintiff asserts it should include efforts related to achieving service on Defendants; Defendants claim only the fees and expenses associated with the motion for default judgment should be awarded. For the reasons explained below, the undersigned **RECOMMENDS** that reasonable attorney's fees and expenses related to Plaintiff's attempts to obtain service on Defendants should be included in the award. After considering the hourly rates and the time spent on this matter, the undersigned **RECOMMENDS** Plaintiff be awarded $27,705.50 for attorney's fees and $2,565.60 in expenses.

### A. Scope of Attorney's Fees and Expenses

In moving for default judgment, a plaintiff has "the burden of proving that the defendant was properly served." *Est. of Wyatt v. WAMU/JP Morgan Chase Bank*, No. 09-14919, 2011 WL 3163242, at *3 (E.D. Mich. July 27, 2011) (citing *INYST Fin. Grp., Inc. v. Chem–Nuclear Sys., Inc.*, 815 F.2d 391, 398 (6th Cir. 1987)). "Proper service is a prerequisite to personal jurisdiction, and therefore default judgment is inappropriate in the absence of service." *Id.* (citing *Friedman v. Est. of Presser*, 929 F.2d 1151, 1156 (6th Cir. 1991)). *Accord Grand Ent. Grp., Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 492 (3d Cir.1993).

Accordingly, in moving for default judgment, Plaintiff was required to show that it properly served Defendants. Reasonable attorney's fees and expenses in achieving this service are therefore appropriately within the scope of Plaintiff's "efforts to obtain . . . a default" [Doc. 38 pp. 7–8]. *See Arch Wood Protection, Inc. v. FlamedXX, LLC*, No. 1:10-CV-282, 2012 WL 3763905, at *2 (E.D.

Tenn. Aug. 9, 2012) (recommending an award of attorney's fees and expenses related to "[a]ttempts to obtain service on [the defendant]" in addition to preparation for the application for default, motion for default judgment, response in opposition to the motion to set aside, and preparation for and participation in an evidentiary hearing), *report and recommendation adopted by* 2012 WL 3775888 (E.D. Tenn. Aug. 29, 2012). The undersigned **RECOMMENDS** that the time Plaintiff spent related to achieving service on Defendants be compensable.

B.  **Reasonableness**

Because the Chief District Judge has already determined that attorney's fees and expenses should be awarded to Plaintiff, the only determination for the undersigned is whether the requested amount of attorney's fees is reasonable. In making this determination, courts often employ the "lodestar method," which is "the proven number of hours reasonably expended on the case by the attorney, multiplied by a reasonable hourly rate." *Isabel v. City of Memphis*, 404 F.3d 404, 415 (6th Cir. 2005). The reasonableness of the hours and the rate is determined by considering twelve factors:

> (1) time and labor required; (2) the novelty and difficulty of the questions presented; (3) the skill needed to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time and limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id*. at 415–16 (cleaned up). "'[T]he most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.'" *Farrar v. Hobby*, 506 U.S. 103, 114 (1992) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983)).

Defendants object to Plaintiff's "fee structure," stating that the hourly rates and the time spent on this matter are unreasonable [Doc 46 p. 2].[2] Plaintiff claims they are not.

### 1. Hourly Rates

Plaintiff seeks hourly rates of $450 for Attorney Trimble, $400 for Attorney Hyland, $350 for Attorney Radcliff, $350 for Attorney Vining, and $160 for Ms. Ahuja, who is a paralegal. According to Plaintiff, the Court is not required to apply the "local geographic community [rates] where the matter is to be tried[,]" but instead, the court may "look beyond the local venue" when the "litigation involves a specialized area of law" [Doc. 44 p. 6]. Plaintiff asserts that "litigating federal trademark infringement cases . . . requires highly specialized practitioners" [*Id*. at 7]. Defendants counter that "the parties have not even gotten to any branch of litigation regarding the underlying issues" [Doc. 46 p. 2]. But Defendants have not pointed the Court to any authority for their argument that attorneys should bill different rates in the same case for different types of work.

Regardless, the Court must determine whether Plaintiff's rates are reasonable. In determining the appropriate hourly rate to apply, the district court must consider the prevailing market rate in the relevant community, which for fee purposes, is generally the legal community within the court's territorial jurisdiction or venue. *Waldo v. Consumers Energy Co.*, 726 F.3d 802, 821 (6th Cir. 2013) ("A trial court, in calculating the 'reasonable hourly rate' component of the lodestar computation, should initially assess the '*prevailing market rate in the relevant community*.'" (quoting *Adcock-Ladd v. Sec'y of the Treasury*, 227 F.3d 343, 349 (6th Cir. 2000))); *see also Linneman v. Vita-Mix Corp.*, 970 F.3d 621, 630 (6th Cir. 2020) ("[I]t's called the 'community market rule' for a reason[.]"); *but see Smith v. Serv. Master Corp.*, 592 F. App'x 363, 369 (6th Cir. 2014) ("There is some Sixth Circuit authority that the relevant market need not be

---

[2] Defendants do not pose any objections to the reasonableness of the expenses incurred by Plaintiff [*See* Doc. 46].

local to the venue."); *McHugh v. Olympia Ent., Inc.*, 37 F. App'x 730, 740 (6th Cir. 2002) ("Generally district courts are free to look to national markets, an area of specialization, or any other market they believe is appropriate to fairly compensate attorneys in individual cases."), *amended on denial of reh'g*, 41 F. App'x 758 (6th Cir. 2002) (citation omitted).

The Court of Appeals for the Sixth Circuit has explained that "[w]hen fees are sought for an out-of-town specialist, courts must determine (1) whether hiring the out-of-town specialist was reasonable in the first instance, and (2) whether the rates sought by the out-of-town specialist are reasonable for an attorney of his or her degree of skill, experience, and reputation." *Hadix v. Johnson*, 65 F.3d 532, 535 (6th Cir. 1995) (citation omitted). "A corollary of this rule is that judges may question the reasonableness of out-of-town attorney's billing rate if there is reason to believe that competent counsel was readily available locally at a lower charge or rate." *Id.*; *see also Chrapliwy v. Uniroyal, Inc.*, 670 F.2d 760, 769 (7th Cir. 1982) (explaining that courts have the "discretion to question the reasonableness of an out of town attorney's billing rate if there is reason to believe that services of equal quality were readily available at a lower charge or rate in the area where the services were to be rendered"). Overall, the Court's function is to assess the appropriate or reasonable hourly rate, which "may not . . . exceed the amount necessary to cause competent legal counsel to perform the work required." *Brooks v. Invista (Koch Indus.)*, 528 F. Supp. 2d 785, 794 (E.D. Tenn. 2007) (citing *Coulter v. Tennessee*, 805 F.2d 146, 148 (6th Cir. 1986), *abrogated on other grounds by The Ne. Ohio Coal. for the Homeless v. Husted*, 831 F.3d 686 (6th Cir. 2016)).

The undersigned finds that Plaintiff has not shown that the Court should adopt out-of-town counsel's rates. *Polymeric Res. Corp. v. Pounds of Plastic, LLC*, No. 320CV00013GFVTEBA, 2022 WL 3568182, at *4 (E.D. Ky. Aug. 18, 2022) ("The burden to show that an attorneys' fee is reasonable plainly falls upon the fee applicant[.]"). Plaintiff asserts that federal trademark

infringement is a "specialized area of the law" justifying use of out-of-town counsel [Doc. 44 pp. 6–7]. But Plaintiff does not present any evidence that federal trademark infringement cases are so specialized that employing out-of-town counsel is reasonable in this case. *Martinez v. Blue Star Farms, Inc.*, 325 F.R.D. 212, 222 (W.D. Mich. 2018) (denying out-of-town counsels' rates because they failed to show that the "required specialized expertise . . . was unavailable in the [local] legal market"); *Clark v. W. Iris Transp., Inc.*, No. CV 18-168-DLB-CJS, 2020 WL 2781601, at *4 (E.D. Ky. Feb. 27, 2020) ("[Plaintiff] still fails to answer the pertinent question—was special assistance from out-of-town counsel necessary in the first instance?"), *report and recommendation adopted by* No. CV2018168WOBCJS, 2020 WL 2789910 (E.D. Ky. Mar. 19, 2020)).

Even though federal trademark infringement cases may be a specialized area of the law, it does not necessarily mean that local counsel is unavailable to take these types of cases. Indeed, in recent years, the Court has heard a number of trademark infringement actions where local counsel represented one or more parties.[3] And the cases that Plaintiff relies on do not persuade the undersigned that specialized expertise was unavailable in the local legal market. *Cf. iLOR, LLC v.*

---

[3] *See, e.g.*, *Axle Logistics, LLC v. Axle Payments, LLC*, No. 3:22-cv-173 (E.D. Tenn. May 17, 2022) (plaintiff represented by local counsel); *Tenn. Valley Orthopedics and Sports Medicine Assoc., P.C. v. Tenn. Valley Orthopaedics, LLC*, No. 3:22-cv-52 (E.D. Tenn. Feb. 9, 2022) (both parties represented by local counsel); *Albuquerque Int'l Balloon Fiesta, Inc. v. Monroe Life Balloon Fiesta*, No. 3:21-cv-361 (E.D. Tenn. Oct. 21, 2021) (plaintiff represented by local and out-of-state counsel and defendants represented by local counsel); *The Univ. of Tenn. v. Tenn. Bonding Co.*, No. 3:20-cv-204 (E.D. Tenn. May 12, 2020) (both parties represented by local counsel); *DayCab Co., Inc. v. Praire Tech., LLC*, No. 3:20-cv-63 (E.D. Feb. 14, 2020) (plaintiff represented by local counsel and defense counsel from within district); *Ole Smoky Distillery, LLC v. King Distilling LLC,* No. 3:19-cv-178 (E.D. Tenn. Sept. 11, 2018) (both parties represented by local counsel); *Home Fed. Bank of Tenn. v. Home Fed. Bank Corp.*, No. 3:18-cv-379 (E.D. Tenn. Sept. 11, 2018) (plaintiff and defendant represented by local counsel); *Skuid, Inc. v. Autodesk*, No. 1:16-cv-312 (E.D. Tenn. July 22, 2016) (plaintiff represented by counsel from within district); *Yoe v. Cresent Sock Co.*, No. 1:15-cv-3-SKL (E.D. Tenn. Jan. 6, 2015) (defendant represented by local counsel); *Choice Hotels Int'l, Inc. v. SRM Lodging Lodge*, No. 1:12-cv-97-HSM-SKL (E.D. Tenn. Mar. 27, 2012) (defendant represented by local counsel); *Advantage Pers. Consultants, Inc. v. Advantage Human Resourcing, Inc. of Tenn.*, No. 1:11-cv-87-CLC-WBC (E.D. Tenn. Apr. 11, 2011) (plaintiff represented by counsel from within district).

*Google, LLC*, No. CIV.A 5:07-109-JMH, 2009 WL 3367391, at *5 (E.D. Ky. Oct. 15, 2009) (awarding rates that "well exceed that of local counsel" finding that the attorneys were specialists in intellectual property which was national in scope and the firm was "clearly intimately aware of the product, "its parameters and limitations, as well as the history of the two parties");[4] *Swapalease, Inc. v. Sublease Exchange.com, Inc.*, No. 1:07-CV-45, 2009 WL 1119591, at *5 (S.D. Ohio Apr. 27, 2009) ("The Court's experience, reinforced by review of patent cases now pending in the Cincinnati division, is that it is not uncommon for one or both parties in an infringement action to be represented by out-of-town counsel. This suggests that there is not an abundance of experienced patent litigators in Ohio."); *Beckman Instruments, Inc. v. LKB Produkter AB*, 703 F. Supp. 408, 411 (D. Md. 1988) (finding the firm's rates reasonable given that it "specializes in patent work, an area requiring expertise" but not analyzing whether hiring out-of-town counsel was reasonable), *aff'd in part and vacated in part*, 892 F.2d 1547 (Fed. Cir. 1989). The undersigned therefore finds no basis to invoke the exception to the community market rule in this matter.

Based on the Court's knowledge and experience in handling similar fee requests, *see Van Horn v. Nationwide Pro. & Cas. Ins.*, 436 F. App'x 496, 499 (6th Cir. 2011) (explaining that a district court may look to "a party's submissions, awards in analogous cases, state bar association guidelines, and its own knowledge and experience in handling similar fee requests"),[5] the undersigned recommends the following rates be awarded in this case: (1) Attorney G. Hyland, who

---

[4]  The district court's decision of awarding attorney's fees was later vacated, although not for relying on out-of-town rates. *iLOR, LLC v. Google, Inc.*, 631 F.3d 1372, 1380 (Fed. Cir. 2011).

[5]  While the undersigned has relied on the Court's knowledge and experience in recommending the above rates, the undersigned has reviewed the AIPLA 2021 Report of the Economic Survey [Doc. 44-5]. But even in this report, there were only three firms in the Southeast that reported their rates [*Id*. at 5]. Given the small amount of data, the undersigned finds it cannot rely on this report to award reasonable rates in this case.

is a senior attorney with sixteen years of experience, $315 per hour, (2) Attorney Seth Trimble, who is a senior attorney with twelve years of experience, $300 per hour,[6] (3) Attorney Brent Radcliff, an associate but does not provide his years of service, $250 per hour, and (4) Attorney Austin Vining, who does not provide his years of service but provides in detail his professional background, $275 per hour.[7] The undersigned also recommends that the Chief District Judge reduce the requested $160 per hour for Ms. Ahuja, who is a senior paralegal, to $100 per hour.[8] Plaintiff does not provide information to justify a higher rate.

---

[6] Attorney Trimble's billing rate is slightly higher than Attorney Hyland's billing rate. They are both senior attorneys, so it is not clear to the undersigned why the billing rates are different. In assessing the reasonable rate, the undersigned has reviewed the professional experience and accounted for their years practicing law, along with considering similar awards.

[7] *See Knox Trailers, Inc. v. Clark*, No. 3:20-CV-137-TRM-DCP, 2022 WL 4372350, at *4 (E.D. Tenn. Sept. 21, 2022) (awarding similar rates in a case alleging breach of fiduciary duty, intentional interference with business relations, unfair competition, misappropriation of trade secrets, and civil conspiracy); *Knisley v. Johnson*, No. 3:21-cv-420, Doc. 24 (E.D. Tenn. Aug. 10, 2022) (in an unjust enrichment case, awarding an attorney with fourteen years of experience $300 per hour given that he provided no details regarding his professional experience); *ERMC v. Millertown*, 3:19-cv-407 & 408, Doc. 75 (E.D. Tenn. Aug. 1, 2022) (explaining that an attorney who practiced for seven years charged $228.26, $260.60, and $298.90 from 2019 to 2021 in a breach of contract case); *Almanza v. Barr*, No. 3:15-CV-389-TAV-HBG, 2019 WL 13159729, at *9 (E.D. Tenn. Aug. 5, 2019) (recommending an attorney who graduated law school in 2006 but had been practicing employment law for eight years be awarded $260.00 per hour); *Vaughn v. Parkwest Med. Ctr.*, No. 3:15-CV-228, Doc. 117 (E.D. Tenn. Feb. 15, 2019) (recommending award of $290 per hour for worked performed 2014 through 2018 for an attorney who had practiced approximately twelve years), *report and recommendation adopted by* 2019 WL 1290877, at *1 (E.D. Tenn. Mar. 20, 2019); *EEOC v. Dolgencorp, LLC*, No. 3:14-CV-441-TAV-HBG, 2017 WL 9517513, at *5 (E.D. Tenn. Aug. 7, 2017) (recommending $350.00 per hour for a litigator with twenty-four years of experience and $250.00 per hour for an attorney who graduated law school in 2006), *report and recommendation adopted by* 277 F. Supp. 3d 932 (E.D. Tenn. 2017), *aff'd*, 899 F.3d 428 (6th Cir. 2018); *Jones v. Babcock & Wilcox Tech. Servs. Y-12, LLC*, No. 311-CV-00531-PLR-HBG, 2016 WL 4691294, at *1 (E.D. Tenn. Aug. 8, 2016) (recommending award of $345.00 per hour in a civil rights case where the attorney had thirty-eight years of experience), *report and recommendation adopted by* 2016 WL 4690398 (E.D. Tenn. Sept. 7, 2016).

[8] *See Almanza*, 2019 WL 13159729, at *10 (recommending $95 per hour for senior legal assistants in employment case, noting an increase in paralegal rates since 2017 from $75 per hour); *Gunter v. Bemis Co.*, No. 4:16-CV-00037, 2019 WL 3526337, at *8 (E.D. Tenn. July 25, 2019)

11

### 2. Time Spent

The attorneys and the paralegal spent 126 hours on this matter [Doc. 44-1 pp. 6–7]. Other than the objection to scope addressed above, Defendants' only objection to this amount is that it is "overbroad" because "[m]embers of the bar are tasked with familiarity with the rules of procedure and court" [Doc. 46 p. 2]. They argue that "it would stand to reason some of the time claimed as research for something that would be in the general purview of a member of the bar seems excessive" [*Id.*]. But Defendants do not identify any specific billing entry that of is unreasonable. Even so, the undersigned has reviewed the billing entries [Doc. 44-2] and finds them to be reasonable. In making this finding, the undersigned notes that "Plaintiff was forced to go to extraordinary lengths to serve Defendants, attempting service twenty-two times" [Doc. 38 p. 3 (citation omitted)]. Further, the attorneys delegated much of the work to Ms. Ahuja, who exercised billing discretion by not charging for all her work performed [Doc. 44-2 pp. 8–9], and to an associate, Attorney Radcliff. The undersigned finds no basis to reduce the time spent in this matter.

### C. Defendants' Ability to Pay

According to Defendants' response, they have limited ability to pay any award of attorney's fees and expenses. Plaintiff counters that inability to pay is irrelevant when there is a finding of bad faith.

The Chief District Judge exercised his inherent powers in determining that Defendants must pay Plaintiff for reasonable attorney's fees and expenses associated with obtaining and

---

(recommending a $75.00 hourly rate based on customary rates in district for paralegal for whom no information was provided concerning experience); *Herring v. SCI Tenn. Funeral Servs, LLC*, No. 2:15-cv-280, 2018 WL 2406008, at *8 (recommending that paralegal's rate be reduced from $125 per hour to $90 per hour), *report and recommendation adopted by* 2018 WL 2407192 (E.D. Tenn. May 24, 2018); *Flack v. Knox Cnty.*, No. 3:15-CV-522-PLR-HBG, 2017 WL 627460, at *5 (E.D. Tenn. Jan. 24, 2017) (recommending that a paralegal who had a law degree should be awarded $95 per hour as opposed to the requested $140 per hour), *report and recommendation adopted by* 2017 WL 627436 (E.D. Tenn. Feb. 14, 2017).

maintaining default. *Arch Wood Prot., Inc. v. FlamedXX, LLC*, No. 1:10-CV-282, 2012 WL 1071137, at *11 (E.D. Tenn. Mar. 29, 2012) ("The Sixth Circuit has recognized a district court's inherent power to impose monetary sanctions when setting aside a default under Fed. R.C.P. 55(c)."). "[A] specific inquiry into [a party's] ability to pay is not required, when sanctions are imposed under the Court's inherent power." *Williamson v. Recovery Ltd. P'ship*, No. 2:06-CV-00292, 2014 WL 1884401, at *15 n.7 (S.D. Ohio May 9, 2014) (citing *Telechron, Inc. v. Intergraph Corp.*, 91 F.3d 144, at *2 (6th Cir. July 2, 1996)), *aff'd*, 826 F.3d 297 (6th Cir. 2016)); *see also Sun v. CM Prod., Inc.*, No. 5:07-CV-227-JMH, 2009 WL 482523, at *2 (E.D. Ky. Feb. 25, 2009) ("Indeed, this Court has found no precedent which requires it to consider [p]laintiff's ability to pay when it exercises its inherent powers to sanction him and, in this instance, the Court declines to do so." (footnote omitted)). "[E]ven if the Court wished to undertake this analysis, it could not do so in this instance as [Defendants have] provided the Court with no evidence of [their] assets or lack thereof." *Sun*, 2009 WL 482523, at *2 n.1.

### D. Plaintiff's Request for Stay

Plaintiff requests that the Court stay the litigation for sixty days pending Defendants' payment of the fees and costs [Doc. 44 p. 9]. Then, if Defendants fail to pay within sixty days, Plaintiff requests that the Court strike Defendants' Answer and enter default judgment pursuant to its inherent authority [*Id.*]. Defendants oppose this request stating that "[f]orcing [them] to 'find' the award within the time frame very well could easily doom any chance" to defend the matter [Doc. 46 p. 3].

The undersigned recommends that Plaintiff's request for a stay pending Defendants' payment of fees and expenses be denied at this time. Should the Chief District Judge adopt the undersigned's recommended attorney's fee award, the undersigned further recommends that he

13

order the parties to participate in a meet and confer to determine an appropriate payment structure and timeline. The undersigned further recommends that, if the parties' meet and confer is unsuccessful, the District Judge order that they contact the undersigned's Chambers to facilitate resolution.

## III. CONCLUSION

For the reasons explained above, the undersigned **RECOMMENDS**[9] that the Chief District Judge **GRANT IN PART AND DENY IN PART** Plaintiff's request for attorney's fees and expenses [**Doc. 44**] and that he award Plaintiff $27,705.50 in attorney's fees and $2,565.60 in expenses.

Respectfully submitted,

Jill E. McCook
United States Magistrate Judge

---

[9] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Civ. P. 72(b)(2). Such objections must conform to the requirements of Federal Rule of Civil Procedure 72(b). Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 153-54 (1985). "[T]he district court need not provide *de novo* review where objections [to the Report and Recommendation] are '[f]rivolous, conclusive or general.'" *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986) (quoting *Nettles v. Wainwright*, 677 F.2d 404, 410 n.8 (5th Cir.1982)). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed. of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).