IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| THE GATHERING SPOT, LLC,<br>　　　Plaintiff,<br><br>v.<br><br>THE GATHERING SPOT AT BURLINGTON<br>VILLAGE, LLC and TERRI CADE-HILL,<br>　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

CIVIL ACTION FILE NO.
3:22-cv-00007-TRM-JEM

JURY TRIAL DEMANDED

---

## JOINT APPENDIX[1]

---

**Table of Contents:**

1. Complaint and Exhibits……………………………………………………..1-35

2. Complaint Verification……………………………………………........................ 36

3. Requests for Admissions……………………………………………………..37-45

4. Declaration of Amanda G. Hyland and Exhibits………………………..…46-55

Respectfully submitted this 5th day of July 2023.

/s/ Amanda G. Hyland
Micheline K. Johnson
Tennessee Bar No. 013847
Amanda G. Hyland (admitted pro hac vice)
Georgia Bar No. 325115
**TAYLOR ENGLISH DUMA LLP**
1600 Parkwood Circle, Suite 200
Atlanta, Georgia 30339
Telephone: (770) 434-6868
Fax: (770) 434-7376
ahyland@taylorenglish.com

---

[1] On June 29, 2023, counsel for Plaintiff provided counsel for Defendants with the proposed contents of this Joint Appendix for his review prior to filing the related motion for summary judgment. As of this filing, counsel for Plaintiff have not received a response or revisions to the Joint Appendix from counsel for Defendants. Accordingly, the undersigned is submitting this Joint Appendix pursuant to the Court's Judicial Preference 5(H).

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE

THE GATHERING SPOT, LLC,

        Plaintiff,

v.

THE GATHERING SPOT AT BURLINGTON
VILLAGE LLC and TERRI CADE-HILL,

        Defendants.

Case No.

## **COMPLAINT**

Plaintiff The Gathering Spot, LLC, ("TGS" or "Plaintiff"), by and through its counsel, files the instant Complaint against Defendants The Gathering Spot at Burlington Village LLC ("Burlington TGS") and Terri Cade-Hill (collectively "Defendants"), and alleges the following:

## **INTRODUCTION**

TGS is a widely popular private membership club. Among many of its service offerings, TGS offers restaurant and bar services and event space for private events such as weddings, concerts, and conferences. TGS' members are dispersed across the United States and have access to each the club's locations in Washington, D.C., Atlanta, and Los Angeles, as well as its affiliate locations in Charlotte, New York City, Houston, Detroit, and Chicago.

TGS first began using the name "THE GATHERING SPOT" in commerce when it opened its flagship location in Atlanta in January 2016. Since then, TGS has continued to gain acclaim and notoriety through its high-profile members and guests, and by hosting events such as TED Talks, seminars, workshops, professional networking events, and political fundraisers. In nearly

1

six years since its beginning, TGS now owns four federal trademark registrations for "THE GATHERING SPOT" or "TGS" (Exhibit A), with unsurpassed goodwill in its brand.

On the morning of November 4, 2016, Defendant Terri Cade-Hill visited TGS's Atlanta location as a guest and met Ryan Wilson, the cofounder of TGS. (Exhibit B). Shortly after her visit, Ms. Cade-Hill emailed Mr. Wilson asking for anything that could assist her in opening a shared working space in Knoxville, TN, specifically resources related to financing and creating the structure and technology. *Id.* Mr. Wilson provided Ms. Cade-Hill with information related to the resources he used to secure financing and an offer to continue discussions related to her Knoxville space. Unfortunately, at that time, Mr. Wilson did not know Ms. Cade-Hill would go on to create a competing business that was a mirror image of TGS, copying everything down to the name.

Burlington TGS began using the same "THE GATHERING SPOT" mark in association with services identical to those of TGS in 2019. At some point, like TGS, the Defendant also began promoting itself as a restaurant as well. Despite receiving numerous communications from TGS asking Burlington TGS to rebrand, it has refused to do so.

Moreover, Burlington Village also uses lewd references in its marketing efforts which tarnish the reputation TGS has established and promoted since its inception. As a result, Burlington Village's business is likely causing many consumers to develop a negative impression of the true and original TGS brand. Accordingly, TGS seeks monetary and injunctive relief from the Court to end Defendant's unlawful practices, to protect the TGS brand, and to compensate TGS for the harm it has suffered.

2

## NATURE OF THE ACTION

1.      This is an action for trademark infringement, unfair competition, and dilution under the Lanham Act, 15 U.S.C. §§ 1116, 1125(a), 1125(c); and trademark infringement and dilution by tarnishment under Tennessee law.  Plaintiff is seeking an injunction against the illegal infringement activities of Defendant to stop the irreparable harm to TGS' brand, in addition to monetary damages and treble damages where allowed.

## PARTIES

2.      Plaintiff, The Gathering Spot, LLC ("TGS") is a Georgia limited liability company with a principal place of business at 384 Northyards Boulevard NW, Building 100, Atlanta, Georgia.

3.      Defendant, The Gathering Spot at Burlington Village LLC ("Burlington TGS"), is a Tennessee limited liability company with its principal place of business at 3944 Alma Avenue, Knoxville, Tennessee.

4.      Defendant, Terri Cade-Hill, is an individual in Georgia, residing at 4248 Stillwater Point, Ellenwood, Georgia.

## JURISDICTION AND VENUE

5.      This is a civil action seeking injunctive relief, damages, and other forms of relief from Defendant for trademark infringement, unfair competition, dilution, and counterfeiting.  It also seeks attorneys' fees.

6.      This Court has subject matter jurisdiction over this pursuant to 28 U.S.C. §§ 1331 and 1332 because it presents a federal question.

3

7.     This Court has personal jurisdiction over Burlington TGS because it resides in this district.

8.     This Court has personal jurisdiction over Ms. Cade-Hill because she transacts business in this state, possesses real property in this state, and has caused tortious injury to TGS based on her acts in this state.

9.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) and (2) because Defendant resides in this judicial district and because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

**FACTS**

10.     The Gathering Spot LLC was founded in 2016 by Ryan Wilson and TK Peterson.

11.     TGS is a members-only, private social club featuring a restaurant and event space designed to provide its members with opportunities to socialize, experience cultural events, and collaborate professionally.

12.     TGS also offers a variety of other amenities to its members, including a bar, concierge services, a wedding reception venue, workshops, social events, corporate functions, live music, panel discussions, a business center, philanthropic opportunities, and collaborative workspace.

13.     TGS' membership roster is filled with celebrities, creatives, politicians, and many other successful and well-known executives and entrepreneurs.

14.     Based on the club's sustained success, TGS has continued to grow its membership in Atlanta and in other cities around the country.

15.     TGS has raised its national profile and expanded its locations to some of the largest cities in the country from Atlanta to Washington, D.C., and Los Angeles.

4

16. Additionally, TGS has purposefully directed marketing expense and efforts to cities such as Charlotte, New York City, Houston, Detroit, and Chicago as "connected cities" – where members in those locations can receive exclusive members-only experiences in their city, have access to other TGS clubs, online events and workshops; all in these cities where TGS has publicly expressed its intent to eventually build permanent locations.

17. On October 4, 2016, TGS registered "THE GATHERING SPOT" with the United States Patent and Trademark Office under Registration No. 5123588 for "Concierge services for others, namely, making requested personal arrangements and reservations, running errands, and providing customer-specific information to meet individual needs" in International Class 45. A copy of the Certificate of Registration for this mark is included in the attached Exhibit A.

18. Additionally, on January 17, 2017, TGS was also granted a federal trademark registration for THE GATHERING SPOT under Registration No. 5053536 for the following services: "Social club services, namely, arranging, organizing, and hosting social events, get-togethers, and parties for club members" in International Class 41 and " Providing food and drinks; bar and cocktail lounge services; providing conference rooms; restaurant and catering services; providing social meeting, banquet and social function facilities" in International Class 43. A copy of the Certificate of Registration for this mark is also included in the attached Exhibit A.

19. Since at least January 30, 2016, until present, TGS has used the mark "THE GATHERING SPOT" in commerce in connection with the associated services.

20. TGS's trademarks have been in continuous use for over five years and have achieved widespread public recognition and developed acquired distinctiveness from the frequent sponsorship of events, concerts, debates, and conferences.

5

21.     As a result of TGS's extensive promotional efforts, and its commitment to being a leader in the social engagement event and co-working space while maintaining a top-notch restaurant and bar, the public associates THE GATHERING SPOT with the business first established by the Plaintiff in Atlanta.

22.     Further, unsolicited media recognition further associates THE GATHERING SPOT with the Plaintiff.   For example, TGS and/or its founders have been featured in FOOD & WINE magazine, the Los Angeles Sentinel, The Georgetowner, Creative Loafing, NBC News, CBS 46, The New York Times, ESSENCE magazine, Atlanta Business Chronicle, VARIETY (magazine),  Metro Atlanta Chamber, Atlanta Magazine, INC (magazine), WIRED (magazine), The Atlanta Journal Constitution, USA TODAY, Fast Company, Nightly News with Lester Holt, Newsone, FORBES, Bloomsberg Businessweek, Black Enterprise, BILLBOARD, and many others.

23.     As a result of Plaintiff's continuous and exclusive use of the GATHERING SPOT mark, the mark enjoys wide public acceptance and association with TGS, and it has come to be recognized widely and favorably.

24.     In 2019, Defendant adopted the mark "The Gathering Spot," operating it in Knoxville, Tennessee.

25.     Prior to the opening of "Burlington TGS," its founder Terri Cade-Hill visited The Gathering Spot as a guest at the Atlanta location on November 4, 2016, where she met with Mr. Wilson.

26.     Upon visiting TGS' Atlanta location, Ms. Cade-Hill had access to every aspect of TGS' operation, an opportunity to view the club's set-up, organizational arrangement, and see the success of the TGS business model firsthand.

6

27. On the same morning of her visit, Ms. Cade-Hill emailed Mr. Wilson asking for assistance with finding the money and creating the structure and technology for a shared working space she was developing in Knoxville, TN. (Exhibit B)

28. Thereafter, Ms. Cade-Hill returned to Tennessee and began laying the groundwork for what would become a virtual doppelganger of TGS' business, even down to the name, "THE GATHERING SPOT."

29. Burlington TGS opened on June 13, 2019, as shown in its below announcement:



30. In blatant disregard of TGS's trademark rights, like TGS, Burlington TGS has operated a restaurant, hosted weddings, parties and concerts, all under an identical or confusingly similar mark. The infringing mark is depicted below.

7

**PLAINTIFF'S WEBSITE:**



**DEFENDANT'S WEBSITE:**



31.    In further exacerbating the infringement, Burlington TGS has and continues to market itself as "THE GATHERING SPOT" without using "at Burlington Village" in advertising and marketing materials.

32.    In fact, Mr. Wilson initially communicated with Ms. Cade-Hill through text to notify her that using and/or marketing her business under "THE GATHERING SPOT" name

8

infringed upon the rights of his business. Mr. Wilson also explained to Ms. Cade-Hill that there was no method of curing the infringement aside from her no longer using the mark and she must stop immediately.

33.    Ms. Cade-Hill ignored Mr. Wilson's messages and continued operating under the Burlington TGS mark. As a result, TGS sent a formal cease and desist letter to Ms. Cade-Hill, Melissa Nelson, and Anthony Nelson on May 14, 2021. (Exhibit C)

34.    After being notified of their infringement, rather than cease use of the mark "THE GATHERING SPOT," Defendants encroached even more directly on TGS's trademark by removing references to "@ BURLINGTON VILLAGE" from their marketing and promotional materials and began using the mark "THE GATHERING SPOT" by itself. Thus, Defendants intentionally and willfully changed their name to resemble the Plaintiff more closely <u>after receiving several notices of Plaintiff's trademark rights.</u>



35.     Burlington TGS also markets itself using the term "GSPOT," which is direct sexual innuendo that, for a professional establishment like TGS, irreparably tarnishes its reputation.



36.     TGS has never licensed, authorized, or otherwise given permission to Burlington TGS to use name or The Gathering Spot mark, or any confusingly similar variation, in connection with any of the Associated Services, or with any other services that would create a likelihood of confusion with THE GATHERING SPOT mark.

37.     As TGS' competitor, Burlington TGS is offering its services to the same consumers as TGS and the services are marketed in overlapping channels of trade.

38.     Burlington TGS' founders had knowledge of and were familiar with Plaintiff's THE GATHERING SPOT mark, venue, and services prior to adopting the mark.

39.     It is clear that Burlington TGS intentionally adopted and used a confusingly similar imitation of TGS's "THE GATHERING SPOT" mark knowing that it would mislead and deceive

10

consumers into believing that Defendant's services were authorized or licensed by TGS, or otherwise associated with TGS.

40.     Burlington TGS is not authorized or licensed by TGS.

41.     TGS used THE GATHERING SPOT extensively and continuously long before Burlington TGS began using TGS' name "THE GATHERING SPOT" as its own name, in marketing, promoting, or offering its services to the public.

42.     The likelihood of confusion, mistake, and deception engendered by Burlington TGS' infringement of TGS' THE GATHERING SPOT mark is causing irreparable harm to the goodwill symbolized and associated with the mark and the reputation for high quality and excellence that it embodies.

43.     Upon information and belief, Burlington TGS knowingly, willfully, intentionally, and maliciously adopted and used an identical and/or confusingly similar imitation of TGS' THE GATHERING SPOT mark.

## COUNT I
### (Federal Trademark Infringement)

44.     TGS realleges and incorporates herein by this reference the allegations contained in paragraphs 1-43 of this Complaint as if set forth in full.

45.     Burlington TGS' use of an identical and/or confusingly similar version of TGS' THE GATHERING SPOT mark on identical and/or overlapping services is likely to cause confusion, deception, and mistake by creating the false and misleading impression that Burlington TGS' services are associated, affiliated, connected, or have the sponsorship, endorsement, or approval of TGS.

46.     Burlington TGS' mark is confusingly similar to Plaintiff's federally registered marks in violation of 15 U.S.C. § 1114.  Burlington TGS' activities are causing and, unless enjoined

11

by this Court, will continue to cause a likelihood of confusion and deceive the public, and additionally injure TGS' goodwill and reputation, for which TGS has no adequate remedy at law.

47.     Burlington TGS' actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with Plaintiff's Marks which continue to cause great and irreparable harm to TGS.

48.     Burlington TGS caused and is likely to continue causing substantial injury to TGS, and TGS is entitled to injunctive relief and to recover profits, actual damages, and enhanced profits and damages, costs, and reasonable attorneys' fees under 15 U.S.C. §§ 1114, 1116, and 1117.

### COUNT II
### (Federal Unfair Competition)

49.     TGS realleges and incorporates herein by this reference the allegations contained in paragraphs 1- 48 of this Complaint as if set forth in full.

50.     TGS has used the mark "THE GATHERING SPOT" in interstate commerce to advertise, promote, and distinctly identify their services, including, but not limited to the following:  concierge services; arranging, organizing, and hosting social events, get-togethers, weddings, concerts, and parties for club members; provision of food and drinks; bar and cocktail lounge services; providing conference rooms; restaurant and catering services; and provision of social meeting, banquet and social function facilities.

51.     TGS owns federal trademark registration numbers 5123588 and 5053536 for THE GATHERING SPOT.

52.     Burlington TGS has now used the mark, "THE GATHERING SPOT" in interstate commerce to advertise and promote social events, parties, weddings, and restaurant and bar services.

12

53.     Burlington TGS intentionally and willfully used the "THE GATHERING SPOT" mark without permission of TGS in violation of the Lanham Act.

54.     Burlington TGS' unlawful conduct, as set forth herein, has been and continues to be willful, deliberate, and in bad faith.

55.     Burlington TGS' actions described above have caused and are likely to cause confusion, mistake and a misunderstanding and to deceive potential customers and the general public as to the source, origin, sponsorship or approval of their services.

56.     Burlington TGS' demonstrate an intentional, willful and malicious intent to trade on the goodwill associated with Plaintiff's Marks which continue to cause great and irreparable harm to TGS.

57.     Burlington TGS caused and is likely to continue causing substantial injury to TGS, and TGS is entitled to injunctive relief and to recover profits, actual damages, and enhanced profits and damages, costs, and reasonable attorneys' fees under 15 U.S.C. §§ 1125(a), 1116, and 1117.

## COUNT III
### (Federal Trademark Dilution)

58.     TGS realleges and incorporates herein by this reference the allegations contained in paragraphs 1-57 of this Complaint as if set forth in full.

59.     TGS has exclusively and continuously promoted its mark, The GATHERING SPOT, in the United States with locations and associations, including publicly marketed efforts and intentions to establish new locations across the country.  TGS' THE GATHERING SPOT Marks have become famous and well-known in relation to concierge services; arranging, organizing, and hosting social events, get-togethers, weddings, concerts, and parties for club members; provision of food and drinks; bar and cocktail lounge services; providing conference

13

rooms; restaurant and catering services; and provision of social meeting, banquet and social function facilities.

60.    Burlington TGS is making use in commerce of THE GATHERING SPOT and BURLINGTON TGS which dilutes and is likely to dilute the distinctiveness of TGS' federally registered marks by eroding the public's exclusive identification of this famous mark with TGS, tarnishing and degrading the positive associations and prestigious connotations of the mark, and/or otherwise lessening the capacity of the mark to identify services provided by TGS.

61.    Burlington TGS' has caused and is likely to continue causing substantial injury to TGS, and TGS is entitled to injunctive relief and to recover profits, actual damages, and enhanced profits and damages, costs, and reasonable attorneys' fees under 15 U.S.C. §§ 1125(a), 1116, and 1117.

## PRAYER FOR RELIEF

WHEREFORE, TGS requests judgment as follows:

1.    That Burlington TGS, as well as its members, directors, officers, agents, employees, successors and assigns, and all others acting in knowing consort with them, be permanently restrained and enjoined from:

    a.   advertising, marketing, promoting, offering for sale, or providing any services under the Infringing Marks;

    b.   using the "THE GATHERING SPOT" Marks or any other copy, derivation, reproduction, colorable imitation, or simulation of TGS' marks;

    c.   using any trademark, name, logo, design, or source designation of any kind on or in connection with Defendant's services that is likely to cause confusion, mistake, deception, or public misunderstanding that such goods

14

or services are produced or provided by TGS, or are sponsored or authorized by TGS, or are in any way connected or related to TGS; and

d.  using any trademark, name, logo, design, or source designation of any kind on or in connection with Burlington TGS' services that dilutes or is likely to dilute the distinctiveness of TGS' trademarks, trade dresses, names, or logos.

2.      That the Court finds that Defendants have willfully and deliberately committed actions of service mark infringement;

3.      Burlington TGS be compelled to account to TGS for any and all profits derived from sales associated with, in connection with, or under THE GATHERING SPOT Marks or any connotation thereof;

4.      That, in addition to being ordered to pay its profits attributable to the infringing conduct complained of herein to Plaintiffs, Defendants also be ordered to pay its infringing profits as monetary damages, to be increased by the Court by such amount as the Court deems to be just, together with Plaintiffs' damages, all of which, according to the circumstances of this case, should be increased and trebled as provided by law, including 15 U.S.C. § 1117, and paid to Plaintiffs;

5.      That Defendants be ordered to pay statutory damages according to law;

6.      That the Court declare that this is an exceptional case and award Plaintiff attorneys' fees and costs as provided by law;

7.      That TGS be awarded pre-judgment and post-judgment interest on the damages caused by Burlington TGS' infringing activities and other conduct complained of herein;

15

8.     Based on Burlington TGS' knowing and intentional use of a confusingly similar imitation of TGS' mark, the damages awarded be trebled and the award of Burlington TGS' profits be enhanced as provided for by 15 U.S.C. § 1117(a);

9.     And based on Burlington TGS' willful and deliberate infringement and/or dilution of the TGS Marks, and to deter such conduct in the future, TGS be awarded punitive damages; and

10.     That the Court grant Plaintiff's relief and such other and further relief as the Court may deem just and proper under the circumstances.

## <u>DEMAND FOR JURY TRIAL</u>

Under Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs request a trial by jury of any issues so triable by right.

Respectfully submitted this 5th day of January, 2022.

/s/ *Micheline K. Johnson*
Micheline K. Johnson
Tennessee Bar No. 013847
Amanda G. Hyland (*pro hac vice forthcoming*)
Georgia Bar No. 325115
Brent M. Radcliff (*pro hac vice forthcoming*)
Georgia Bar No. 183624
**TAYLOR ENGLISH DUMA LLP**
1600 Parkwood Circle, Suite 200
Atlanta, Georgia  30339
Telephone: (770) 434-6868
Fax: (770) 434-7376
Email:  mkjohnson@taylorenglish.com
        ahyland@taylorenglish.com
        bradcliff@taylorenglish.com

*ATTORNEYS FOR PLAINTIFFS*

16

# EXHIBIT A

# United States of America

## United States Patent and Trademark Office

# The Gathering Spot

**Reg. No. 5,053,536**

**Registered Oct. 04, 2016**

**Int. Cl.: 41, 43**

**Service Mark**

**Principal Register**

The Gathering Spot, LLC (GEORGIA LIMITED LIABILITY COMPANY)
Suite 190
384 Northyards Blvd NW
Atlanta, GA 30313

CLASS 41: Social club services, namely, arranging, organizing, and hosting social events, get-togethers, and parties for club members

FIRST USE 1-30-2016; IN COMMERCE 1-30-2016

CLASS 43: Providing food and drinks; bar and cocktail lounge services; providing conference rooms; restaurant and catering services; providing social meeting, banquet and social function facilities

FIRST USE 1-30-2016; IN COMMERCE 1-30-2016

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT STYLE, SIZE OR COLOR

SER. NO. 86-903,154, FILED 02-10-2016
JAMES W RINGLE, EXAMINING ATTORNEY



Director of the United States
Patent and Trademark Office

---

**REQUIREMENTS TO MAINTAIN YOUR FEDERAL TRADEMARK REGISTRATION**

**WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.**

---

**Requirements in the First Ten Years***
**What and When to File:**

- ***First Filing Deadline:*** You must file a Declaration of Use (or Excusable Nonuse) between the 5th and 6th years after the registration date. See 15 U.S.C. §§1058, 1141k. If the declaration is accepted, the registration will continue in force for the remainder of the ten-year period, calculated from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a federal court.

- ***Second Filing Deadline:*** You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between the 9th and 10th years after the registration date.* See 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods***
**What and When to File:**

- You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between every 9th and 10th-year period, calculated from the registration date.*

**Grace Period Filings***

The above documents will be accepted as timely if filed within six months after the deadlines listed above with the payment of an additional fee.

***ATTENTION MADRID PROTOCOL REGISTRANTS:*** The holder of an international registration with an extension of protection to the United States under the Madrid Protocol must timely file the Declarations of Use (or Excusable Nonuse) referenced above directly with the United States Patent and Trademark Office (USPTO). The time periods for filing are based on the U.S. registration date (not the international registration date). The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations. See 15 U.S.C. §§1058, 1141k. However, owners of international registrations do not file renewal applications at the USPTO. Instead, the holder must file a renewal of the underlying international registration at the International Bureau of the World Intellectual Property Organization, under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated from the date of the international registration. See 15 U.S.C. §1141j. For more information and renewal forms for the international registration, see http://www.wipo.int/madrid/en/.

**NOTE: Fees and requirements for maintaining registrations are subject to change. Please check the USPTO website for further information. With the exception of renewal applications for registered extensions of protection, you can file the registration maintenance documents referenced above online at** http://www.uspto.gov.

**NOTE: A courtesy e-mail reminder of USPTO maintenance filing deadlines will be sent to trademark owners/holders who authorize e-mail communication and maintain a current e-mail address with the USPTO. To ensure that e-mail is authorized and your address is current, please use the Trademark Electronic Application System (TEAS) Correspondence Address and Change of Owner Address Forms available at** http://www.uspto.gov.

# United States of America

## United States Patent and Trademark Office

# THE GATHERING SPOT

**Reg. No. 5,123,588**

**Registered Jan. 17, 2017**

**Int. Cl.: 45**

**Service Mark**

**Principal Register**

The Gathering Spot, LLC (GEORGIA LIMITED LIABILITY COMPANY)
384 Northyards Blvd NW, Suite 190
Atlanta, GA 30313

CLASS 45: Concierge services for others, namely, making requested personal arrangements and reservations, running errands, and providing customer-specific information to meet individual needs

FIRST USE 1-30-2016; IN COMMERCE 1-30-2016

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT STYLE, SIZE OR COLOR

SER. NO. 87-060,969, FILED 06-06-2016
SCOTT BIBB, EXAMINING ATTORNEY



*Michelle K. Lee*

Director of the United States
Patent and Trademark Office

---

**REQUIREMENTS TO MAINTAIN YOUR FEDERAL TRADEMARK REGISTRATION**

**WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.**

---

**Requirements in the First Ten Years***
**What and When to File:**

- *First Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) between the 5th and 6th years after the registration date. See 15 U.S.C. §§1058, 1141k. If the declaration is accepted, the registration will continue in force for the remainder of the ten-year period, calculated from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a federal court.

- *Second Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between the 9th and 10th years after the registration date.* See 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods***
**What and When to File:**

- You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between every 9th and 10th-year period, calculated from the registration date.*

**Grace Period Filings***

The above documents will be accepted as timely if filed within six months after the deadlines listed above with the payment of an additional fee.

**\*ATTENTION MADRID PROTOCOL REGISTRANTS:** The holder of an international registration with an extension of protection to the United States under the Madrid Protocol must timely file the Declarations of Use (or Excusable Nonuse) referenced above directly with the United States Patent and Trademark Office (USPTO). The time periods for filing are based on the U.S. registration date (not the international registration date). The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations. See 15 U.S.C. §§1058, 1141k. However, owners of international registrations do not file renewal applications at the USPTO. Instead, the holder must file a renewal of the underlying international registration at the International Bureau of the World Intellectual Property Organization, under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated from the date of the international registration. See 15 U.S.C. §1141j. For more information and renewal forms for the international registration, see http://www.wipo.int/madrid/en/.

**NOTE: Fees and requirements for maintaining registrations are subject to change. Please check the USPTO website for further information. With the exception of renewal applications for registered extensions of protection, you can file the registration maintenance documents referenced above online at h**ttp://www.uspto.gov.

**NOTE: A courtesy e-mail reminder of USPTO maintenance filing deadlines will be sent to trademark owners/holders who authorize e-mail communication and maintain a current e-mail address with the USPTO. To ensure that e-mail is authorized and your address is current, please use the Trademark Electronic Application System (TEAS) Correspondence Address and Change of Owner Address Forms available at** http://www.uspto.gov.

# United States of America

## United States Patent and Trademark Office

# TGS

**Reg. No. 6,161,277**

**Registered Sep. 29, 2020**

**Int. Cl.: 41**

**Service Mark**

**Principal Register**

The Gathering Spot, LLC  (GEORGIA LIMITED LIABILITY COMPANY)
384 Northyards Blvd. Nw, Suite 190
Atlanta, GEORGIA 30313

CLASS 41: Social club services, namely, arranging, organizing, and hosting social events, get-togethers, and parties for club members

FIRST USE 1-30-2016; IN COMMERCE 1-30-2016

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT STYLE, SIZE OR COLOR

SER. NO. 88-349,775, FILED 03-21-2019



Director of the United States
Patent and Trademark Office



**REQUIREMENTS TO MAINTAIN YOUR FEDERAL TRADEMARK REGISTRATION**

**WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.**

**Requirements in the First Ten Years***
**What and When to File:**

- *First Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) between the 5th and 6th years after the registration date. See 15 U.S.C. §§1058, 1141k. If the declaration is accepted, the registration will continue in force for the remainder of the ten-year period, calculated from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a federal court.

- *Second Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between the 9th and 10th years after the registration date.* See 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods***
**What and When to File:**

- You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between every 9th and 10th-year period, calculated from the registration date.*

**Grace Period Filings***

The above documents will be accepted as timely if filed within six months after the deadlines listed above with the payment of an additional fee.

**\*ATTENTION MADRID PROTOCOL REGISTRANTS:** The holder of an international registration with an extension of protection to the United States under the Madrid Protocol must timely file the Declarations of Use (or Excusable Nonuse) referenced above directly with the United States Patent and Trademark Office (USPTO). The time periods for filing are based on the U.S. registration date (not the international registration date). The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations. See 15 U.S.C. §§1058, 1141k. However, owners of international registrations do not file renewal applications at the USPTO. Instead, the holder must file a renewal of the underlying international registration at the International Bureau of the World Intellectual Property Organization, under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated from the date of the international registration. See 15 U.S.C. §1141j. For more information and renewal forms for the international registration, see http://www.wipo.int/madrid/en/.

**NOTE: Fees and requirements for maintaining registrations are subject to change. Please check the USPTO website for further information. With the exception of renewal applications for registered extensions of protection, you can file the registration maintenance documents referenced above online at** http://www.uspto.gov.

**NOTE: A courtesy e-mail reminder of USPTO maintenance filing deadlines will be sent to trademark owners/holders who authorize e-mail communication and maintain a current e-mail address with the USPTO. To ensure that e-mail is authorized and your address is current, please use the Trademark Electronic Application System (TEAS) Correspondence Address and Change of Owner Address Forms available at** http://www.uspto.gov.

# United States of America

## United States Patent and Trademark Office

# TGS

**Reg. No. 6,161,278**

**Registered Sep. 29, 2020**

**Int. Cl.: 43**

**Service Mark**

**Principal Register**

The Gathering Spot, LLC  (GEORGIA LIMITED LIABILITY COMPANY)
384 Northyards Blvd. Nw, Suite 190
Atlanta, GEORGIA 30313

CLASS 43: Providing food and drinks; bar and cocktail lounge services; providing conference rooms; restaurant and catering services; providing social meeting, banquet and social function facilities

FIRST USE 1-30-2016; IN COMMERCE 1-30-2016

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT STYLE, SIZE OR COLOR

SER. NO. 88-349,785, FILED 03-21-2019



Director of the United States
Patent and Trademark Office



---

**REQUIREMENTS TO MAINTAIN YOUR FEDERAL TRADEMARK REGISTRATION**

**WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.**

---

**Requirements in the First Ten Years***
**What and When to File:**

- *First Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) between the 5th and 6th years after the registration date. See 15 U.S.C. §§1058, 1141k. If the declaration is accepted, the registration will continue in force for the remainder of the ten-year period, calculated from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a federal court.

- *Second Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between the 9th and 10th years after the registration date.* See 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods***
**What and When to File:**

- You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between every 9th and 10th-year period, calculated from the registration date.*

**Grace Period Filings***

The above documents will be accepted as timely if filed within six months after the deadlines listed above with the payment of an additional fee.

***ATTENTION MADRID PROTOCOL REGISTRANTS:** The holder of an international registration with an extension of protection to the United States under the Madrid Protocol must timely file the Declarations of Use (or Excusable Nonuse) referenced above directly with the United States Patent and Trademark Office (USPTO). The time periods for filing are based on the U.S. registration date (not the international registration date). The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations. See 15 U.S.C. §§1058, 1141k. However, owners of international registrations do not file renewal applications at the USPTO. Instead, the holder must file a renewal of the underlying international registration at the International Bureau of the World Intellectual Property Organization, under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated from the date of the international registration. See 15 U.S.C. §1141j. For more information and renewal forms for the international registration, see http://www.wipo.int/madrid/en/.

**NOTE: Fees and requirements for maintaining registrations are subject to change. Please check the USPTO website for further information. With the exception of renewal applications for registered extensions of protection, you can file the registration maintenance documents referenced above online at** http://www.uspto.gov.

**NOTE: A courtesy e-mail reminder of USPTO maintenance filing deadlines will be sent to trademark owners/holders who authorize e-mail communication and maintain a current e-mail address with the USPTO. To ensure that e-mail is authorized and your address is current, please use the Trademark Electronic Application System (TEAS) Correspondence Address and Change of Owner Address Forms available at** http://www.uspto.gov.

# EXHIBIT B





## Black Chamber Member

2 messages

---

**Terri Cade Hill** <michelle_cade@bellsouth.net>
To: rwilson@thegatheringspot.club

Fri, Nov 4, 2016 at 11:51 AM

Hi Ryan,

Nice meeting you and thanks for sharing your contact. I am looking at developing a shared working space in Knoxville, TN. I would appreciate anything that you can share with me in creating that space. What would help me is finding the money, creating the structure and technology.

Terri Cade-Hill
404 663-8426
Www.terricadehill.com

Ps... I am a State Farm Agent in Atlanta... would love to offer a Quote for your business.

Sent from my iPhone

---

**Ryan Wilson** <rwilson@thegatheringspot.club>
To: Terri Cade Hill <michelle_cade@bellsouth.net>

Sun, Nov 6, 2016 at 7:51 PM

Hey Terri,

It was great to meet you last week. I am happy to continue our discussion related to your space in Knoxville. Please find the article about the Russell Innovation Center here. As I mentioned to you, I raised private capital for our space but know that others have used government grants to help with funding. Please let me know how else I can help.

Best,

Ryan

[Quoted text hidden]

--
Ryan Wilson
CEO & Co-Founder
The Gathering Spot
thegatheringspot.club
(678)-232-7076

---

Case 1:23-cv-00001-TRM-CHS Document 55-3 Filed 01/05/24 Page 3 of 7 PageID #: 28
PageID #: 468

10:38

TC

Terri ›

Hey Terri- I hope you are well. I sent you a follow up note to your email address michelle_cade@bellsouth.net. Please get back to me as soon as you can.

Today 10:16 AM

Hi Ryan,

Working on it, any suggestions?

Hey! Unfortunately, the only real option is to pursue a name change. This is far from personal but if we don't enforce our mark I can't against others in the future.

On Monday, I will contact a local attorney to see what my options are.

I understand but I will Pursue my legal opinions.

Thank you for your patience. Attorneys are very costly and

iMessage

JOINT APPENDIX 030

TC

Terri

but if we don't enforce our mark I can't against others in the future.

On Monday, I will contact a local attorney to see what my options are.

I understand but I will Pursue my legal opinions.

Thank you for your patience. Attorneys are very costly and hopefully we can get to a happy ending without their use.

Best

Thank you, I understand about expenses and am doing my best to be patient there. I've asked our attorney to start process on October 22nd if we haven't heard anything. I waited a couple of months to try to give time but need to move forward at this point.

Delivered

iMessage

10:42

TC

Terri >

On Monday, I will contact a local attorney to see what my options are.

I understand but I will Pursue my legal opinions.

Thank you for your patience. Attorneys are very costly and hopefully we can get to a happy ending without their use.

Best

Thank you, I understand about expenses and am doing my best to be patient there. I've asked our attorney to start process on October 22nd if we haven't heard anything. I waited a couple of months to try to give time but need to move forward at this point.

Delivered

I will keep you updated as my information is revealed.

Thank you

iMessage

JOINT APPENDIX 032



Terri ›

to be patient there. I've asked our attorney to start process on October 22nd if we haven't heard anything. I waited a couple of months to try to give time but need to move forward at this point.

I will keep you updated as my information is revealed.

Thank you

It seems like you are frustrated and that isn't my intention. I just wanted to be clear about my next steps. There isn't any option but to stop using our mark. I also have an email exchange from 2016 where we discussed your business and from that you began to use our name without permission. The easiest path forward is to change the name. Please do that quickly so we can avoid a longer process.

Delivered

iMessage

# EXHIBIT C

taylor | english

**Taylor English Duma LLP** 1600 Parkwood Circle, Suite 200, Atlanta, Georgia 30339
Main: 770.434.6868 Fax: 770.434.7376 taylorenglish.com

Amanda G. Hyland
Phone: (678) 336-7247
Email: ahyland@taylorenglish.com

May 14, 2021

*Sent via email to burlingtonvillageknox@gmail.com; and*
*Certified Mail / Return Receipt Requested   7017 0660 0000 0862 9659*

Terri Cade
Melissa Nelson
Anthony Nelson
3906 Martin Luther King Avenue
Knoxville, TN 37914

Dear Owners of the Gathering Spot,

I am an attorney for The Gathering Spot, LLC ("TGS"), which is a network of private membership clubs that serve as a hub of diversity and a cultural epicenter for ideas, one-of-a-kind experiences, gatherings of impact, and transformative relationships. TGS provides social club services, event space, professional speakers, networking opportunities, restaurant and lounge services, and more. TGS began in Atlanta in 2016, has opened in Washington, D.C., and is about to open in Los Angeles. It has developed great renown, particularly in the African American community, with numerous celebrities as members, including T.I. and Keri Hilson. President Biden and Vice president Harris have both made appearances at TGS events, as well as numerous other high-profile speakers.

In other words, TGS has built invaluable goodwill across the nation. It also has numerous federal trademark registrations for the trademark "THE GATHERING SPOT," including Reg. Nos. 5053536 and 5123588. These registrations cover numerous services, including "restaurant and catering services" and "providing social meeting, banquet and social function facilities."

TGS recently became aware that you are operating an event space under the mark "The Gathering Spot" in Knoxville. This usage directly infringes TGS's federal trademark registration, and has already resulted in instances of actual confusion, including one as recently as today on social media. Indeed, you are offering identical services under an identical trademark, in what is a textbook case of flagrant trademark infringement.

We hope to resolve the matter amicably. Indeed, TGS founder Ryan Wilson reached out to you on Instagram last month in hopes of avoiding lawyers in this matter, but you did not respond to him. At this point, TGS will have no choice but to initiate trademark infringement litigation in federal court if you do not cease use of "THE GATHERING SPOT" as a trademark.

**JOINT APPENDIX 035**

Terri Cade
Melissa Nelson
Anthony Nelson
May 14, 2021
Page 2

Please contact me within one week to confirm your intent to rebrand. TGS will cooperate with you to devise a rebranding timeline that is commercially reasonable. If we do not hear from you, TGS will be forced to take formal actions to protect its trademarks, at which point all parties will begin to incur considerable attorney's fees and costs.

Please contact me directly if you'd like to further discuss these matters.


Best regards,

Amanda Hyland

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE

THE GATHERING SPOT, LLC, )
    Plaintiff, )
)
                       ) CIVIL ACTION FILE NO.
v. ) 3:22-cv-00007-TRM-JEM
)
THE GATHERING SPOT AT )
BURLINGTON VILLAGE, LLC and )
TERRI CADE-HILL, ) JURY TRIAL DEMANDED
    Defendants. )
)

## <u>VERIFICATION</u>

I, Ryan Wilson, Chief Executive Officer of The Gathering Spot, LLC, state

that I have read the The Gathering Spot, LLC's Complaint for Damages and

Attorneys' Fees and all exhibits attached thereto and that the facts, including all

screenshots, contained therein, and the exhibits attached thereto are true and

correct based upon my personal knowledge and acquired through my officials

duties with The Gathering Spot, LLC. I verify as such under penalty of perjury

under 28 U.S.C. § 1746.

This 5th day of ~~June~~ July 2023.

                                    _____
                                    Ryan Wilson
                                    Chief Executive Officer
                                    The Gathering Spot, LLC

{02603503-1 }

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| THE GATHERING SPOT, LLC,<br>　　　Plaintiff,<br><br>v.<br><br>THE GATHERING SPOT AT<br>BURLINGTON VILLAGE, LLC and<br>TERRI CADE-HILL,<br>　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

CIVIL ACTION FILE NO.
3:22-cv-00007-TRM-JEM

JURY TRIAL DEMANDED

## PLAINTIFF THE GATHERING SPOT'S FIRST REQUESTS FOR ADMISSIONS TO DEFENDANT THE GATHERING SPOT AT BURLINGTON VILLAGE

　　Pursuant to Rules 26 and 36 of the Federal Rules of Civil Procedure, The Gathering Spot ("TGS" or "Plaintiff") hereby requests that The Gathering Spot at Burlington Village, LLC ("Defendant") serves upon the undersigned attorneys at Taylor English Duma LLP, 1600 Parkwood Circle, Suite 200, Atlanta, Georgia 30339, Attn: Amanda Hyland/ Falkner Werkhaven, answers, under oath, to each of the following interrogatories within thirty (30) days of service of these interrogatories. Defendants' answers also may be produced electronically to ahyland@taylorenglish.com and fwerkhaven@taylorenglish.com.

## <u>INSTRUCTIONS</u>

A.     These requests, which are separately numbered, are for admissions about facts, the application of law to fact, or opinions about either and about the genuineness of certain documents.  If a request is not admitted, Plaintiff's answer must specifically deny it or state in detail why he cannot truthfully admit or deny the request. A denial must fairly respond to the substance of the matter; and when good faith requires that Plaintiff qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest.

B.     Plaintiff may assert lack of knowledge or information as a reason for failing to admit or deny only if he states that he has made reasonable inquiry and that the information he knows or can readily obtain is insufficient to enable him to admit or deny.

C.     The grounds for objecting to a request must be stated. Plaintiff must not object solely on the ground that the request presents a genuine issue for trial.

D.     If you object to any request or any portion of a request on the ground that the answer would reveal the substance of any privileged information, set forth in detail the basis for your claim of privilege and any other objection you may have. If your objection is on the ground that the answer would reveal the substance of a privileged communication, include an identification of:

        (a)     the nature of the privilege or protection claimed;

        (b)     the person who made the communication, whether oral or in writing;

        (c)     if the communication was oral, all persons present while the communication was made;

        (d)     if the communication was written, the author, addressees, and any other recipients;

        (e)     the date and place of the communication; and

        (f)     the general subject matter of the communication.

E.     Unless otherwise stated herein, all requests apply to activities in or in connection with the United States.

F.      These requests are continuing in nature. If you receive or otherwise become aware of information responsive to any request after you have served your responses to these requests, you must promptly supplement your responses to these requests to provide such information, as required by Federal Rule of Civil Procedure 26(e).

G.      For the convenience of the Court and the parties, each request should be quoted in full immediately preceding your response.

H.      Unless otherwise stated herein, these interrogatories cover the time period beginning January 1, 2016.

## <u>DEFINITIONS</u>

As used herein, the following terms are applicable:

A.      "Defendant," "Burlington," "you," "your," or "yours" shall refer to The Gathering Spot at Burlington Village, LLC, as well as (i) its agents, servants, employees, associates, investigators, accountants, consultants, attorneys, members, representatives, and all others who may have obtained information for or on behalf of those named above, (ii) any other person or entity acting on behalf of Defendant, and (iii) any other person or entity otherwise subject to its control.

B.      "TGS" shall refer to Plaintiff The Gathering Spot, LLC, as well as (i) its agents, servants, employees, associates, investigators, accountants, consultants, attorneys, representatives, and all others who may have obtained information for or on behalf of those named above, (ii) any other person or entity acting on behalf of TGS, and (iii) any other person or entity otherwise subject to its control.

C.     "Plaintiff" shall refer to and include the named Plaintiff in this Lawsuit as of the date of these Interrogatories, as well as (i) its agents, servants, employees, associates, investigators, accountants, consultants, attorneys, members, representatives, shareholders, directors, officers and all others who may have obtained information for or on behalf of those named above, (ii) any other person or entity acting on behalf of the named Plaintiff, and (iii) any other person or entity otherwise subject to their control or which controls them.

D.     "Complaint" shall refer to the Complaint and Demand for Jury Trial filed on or about January 5, 2022, in this Lawsuit.

E.     "This Lawsuit" shall refer to the instant action, including all allegations, claims and defenses asserted therein, including all allegations and claims asserted in Plaintiff's Complaint and Defendants respective Answer to any of Plaintiff's Complaints.

F.     "Cease and Desist Letter" shall refer to the "Cease and Desist" dated May 14, 2021, signed by Plaintiff's Counsel and attached as Exhibit C to Plaintiff's Complaint.

G.     "Any" or "each" should be understood to include and encompass "all"; "or" should be understood to include and encompass "and"; and "and" should be understood to include and encompass "or."

H.     The term "document" shall mean, without limitation, the original and any non-identical copy – whether in final form or draft copy – of any kind of written, printed, recorded, reproduced, graphic, or photographic matter or sound reproduction, including: correspondence, telegrams, teletypes, telecopies, facsimiles, tapes, graphic or aural records or representations of any kind including, but not limited to, photographic film, microfilm, microfiche, magnetic impulse, videotape recordings, electronic or mechanical records or representations of any kind, including tapes, cassettes, compact discs and recordings, computer floppy disks in binary format, computer hard drives in binary format, media device, cables or other written communications (including e-mail), contracts, agreements, records, minutes, bills of lading, receipts, analyses, estimates, graphs, studies, evaluations, reports, plans, diagrams, sketches, maps, projections, work papers, books, charts, forms, brochures, pamphlets, schedules, lists, tables, transcripts, affidavits, advertisements, circulars, press releases, bulletins, digests, invoices, or any other information or data, records, summaries, or compilations (including all underlying, supporting, or preparatory materials and drafts thereof) from which information can be obtained, translated, if necessary, by you into reasonably usable form, and all other writings or physical or tangible materials.  Handwritten notations or marginal comments of any kind on a document render it non-identical.

I.    "Person" shall mean any natural person, firm, corporation, partnership, joint venture or any form of business entity or other organization.

## FIRST SET OF REQUESTS FOR ADMISSIONS

**Request No. 1.** Admit that Plaintiff has not assigned rights in the "The Gathering Spot" mark to you.

**Request No. 2.** Admit that Plaintiff has not licensed rights in the "The Gathering Spot" mark to you.

**Request No. 3.** Admit that Defendant has no right to use the "The Gathering Spot" mark.

**Request No. 4.** Admit that you did not use the "The Gathering Spot" mark in commerce before January 30, 2016.

**Request No. 5.** Admit that your use of the "The Gathering spot" mark was not associated with, authorized by, or endorsed by Plaintiff.

**Request No. 6.** Admit that you are currently using the "The Gathering Spot" mark in association with social club services.

**Request No. 7.** Admit that you began using the "The Gathering Spot" mark in association with social club services in 2019.

**Request No. 8.** Admit that you were aware of The Gathering Spot's club's set-up, organization arrangement, and business model before founding The Gathering Spot at Burlington.

**Request No. 9.**    Admit that you emailed Mr. Ryan Wilson asking for assistance with finding the money and creating the structure and technology for a shared working space in Knoxville, TN.

**Request No. 10.**    Admit that your idea for the name "The Gathering Spot" was derived from the Plaintiff's business.

**Request No. 11.**    Admit that "The Gathering Spot" is the dominant part of the name "The Gathering Spot at Burlington Village."

**Request No. 12.**    Admit that Burlington is a geographic place.

**Request No. 13.**    Admit that you continued to use the mark "The Gathering Spot" after being asked to cease use by Plaintiff.

**Request No. 14.**    Admit that you have used "The Gathering Spot" on advertising and promotional materials without using "at Burlington Village."

**Request No. 15.**    Admit that you profited from your use of "The Gathering Spot" mark since 2019.

**Request No. 16.**    Admit that you are aware that your use of "The Gathering Spot" was likely to confuse consumers as to whether Defendants were associated with The Gathering Spot.

**Request No. 17.**    Admit that you are aware that your use of "The Gathering Spot" was likely to deceive consumers as to whether Defendants were associated with The Gathering Spot.

**Request No. 18.**   Admit that you are aware that your use of "The Gathering Spot" caused confusion among consumers as to whether Defendants were associated with The Gathering Spot.

**Request No. 19.**   Admit that you have used the mark "GSPOT" or "G SPOT" in connection with Your business.

**Request No. 20.**   Admit that "G Spot" refers to an erogenous zone in a woman's body.

This 6th day of April, 2023.

/s/ Amanda G. Hyland
Amanda G. Hyland (*pro hac vice*)
Georgia Bar No. 325115
ahyland@taylorenglish.com
Micheline K. Johnson
Tennessee Bar No. 013847
Falkner N. Werkhaven (*pro hac vice forthcoming*)
fwerkhaven@taylorenglish.com
Georgia Bar No. 835676

TAYLOR ENGLISH DUMA LLP
1600 Parkwood Circle, Suite 200
Atlanta, Georgia 30339
Phone: (770) 434-6868
Facsimile: (770) 434-7376

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

This is to certify that the foregoing **PLAINTIFF THE GATHERING SPOT'S FIRST REQUESTS FOR ADMISSIONS TO DEFENDANT THE GATHERING SPOT AT BURLINGTON VILLAGE** has been served upon the following counsel for the parties via electronic mail, as follows:

David H. Dupree
Tennessee Bar No. 025120
P.O. Box 6622
Knoxville, TN, 37914
(865) 332-5140
attydupree@aol.com

This 6th day of April, 2023.

*/s/ Amanda G. Hyland*
Amanda G. Hyland (*pro hac vice*)
Georgia Bar No. 325115

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE

THE GATHERING SPOT, LLC,

               Plaintiff,

   v.

THE GATHERING SPOT AT BURLINGTON
VILLAGE LLC and TERRI CADE-HILL,

               Defendants.

Case No. 3:22-cv-00007-TRM-JEM

## DECLARATION OF AMANDA G. HYLAND

Comes now the Plaintiff, by and through counsel, and submits this declaration in support of Plaintiff's Motion for Summary Judgment.

I, Amanda G. Hyland, declare and state as follows:

1.

The statements set forth in this declaration are made of my own personal knowledge and if called as a witness, I could and would testify competently to the matters stated below.

2.

I am an attorney duly authorized and licensed to practice law in the State of Georgia and have been properly admitted pro hac vice to practice law in the Eastern District of Tennessee for this matter. [1] I am a Partner at Taylor English Duma LLP ("Taylor English"), and counsel of record for Plaintiff The Gathering Spot, LLC ("TGS").

3.

---

[1] Doc. No. 10

I have acted as lead counsel in this case since it was filed, I have been involved personally in litigating this matter at all times, and I have personally supervised and overseen the work of all other attorneys and paralegals at our office for their work on this case.

4.

I submit this Declaration in support of Plaintiff's Motion for Summary Judgment.

5.

I served Plaintiff's First Interrogatories to TGS Burlington, First Requests for Production of Documents to TGS Burlington, and First Requests for Admissions to TGS Burlington upon Defendants' counsel, Mr. David Dupree, via email on April 6, 2023. A copy of the service email is attached hereto as **Exhibit 1.**

6.

To date, I have never received Defendant TGS Burlington's response to Plaintiff's First Interrogatories, First Requests for Production of Documents, or First Requests for Admissions.

7.

Pursuant to Magistrate Judge Jill E. McCook's Report and Recommendation, [Dkt. 53], and this Court's Order May 23, 2023 Order, [Dkt. 54], I contacted Defendants' counsel, Mr. David Dupree, via email on May 8, 2023 and May 12, 2023 to confer about an appropriate payment structure and timeline regarding Plaintiff's award of attorneys' fees. A copy of these emails is attached hereto as **Exhibit 2.**

8.

To date, Defendants have not responded with a proposed payment structure or timeline.

9.

Pursuant to this Court's Judicial Preference 5(H), my office provided Defendants' counsel, Mr. David Dupree, with a copy of Plaintiff's Proposed Joint Appendix, via email on June 29, 2023. A copy of the Joint Appendix email is attached hereto as **Exhibit 3.**

10.

To date, Defendants have not responded to Plaintiff's June 29, 2023 Joint Appendix email.

I declare under penalty of perjury under the laws of the State of Tennessee and of the United States that the foregoing is true and correct.

Executed this 5th day of July, 2023.

<u>/s/ Amanda G. Hyland</u>
Amanda G. Hyland
Attorney for Plaintiff

# EXHIBIT 1

**Paige McKinney**

| | |
|---|---|
| **From:** | Amanda Hyland |
| **Sent:** | Thursday, April 6, 2023 5:10 PM |
| **To:** | 'attydupree@aol.com' |
| **Subject:** | RE: The Gathering Spot |
| **Attachments:** | Plaintiff's First Requests for Admissions to TGS Burlington (02534829xBE13C).PDF; First Set of RFP's to TGS Burlington (02534826xBE13C).PDF; Plaintiff's First Set of Interrogatories to Defendant TGS Burlington (02534821xBE13C).PDF |

Please find discovery requests attached.

Thanks,
Amanda



**Amanda G. Hyland**
**Taylor English Duma LLP** | 1600 Parkwood Circle, Suite 200, Atlanta, GA 30339
P: 678.336.7247 | M: 404.304.0039 | ahyland@taylorenglish.com
Website | LinkedIn | Blog

**Ask Me About Our TED Tenet of the Week: Be Aggressive About Sharing Information.**

Click here to learn more about our TED Tenets.

 Ranked in Chambers 2021

This communication (together with all attachments) may contain privileged or confidential information, and its sender reserves and asserts all rights that may apply to it. If you are not the intended recipient or believe that you have received this communication in error, please do not print, copy, retransmit, disseminate or otherwise use the information. Also, please indicate to the sender that you have received this communication in error and delete the copy you received. If you have not executed an engagement letter with this firm, we do not represent you as your attorney and no duties are intended or created by this communication. Most legal rights have time limits, and this e-mail does not constitute advice on the application of limitation periods unless otherwise so expressly stated.

**From:** attydupree@aol.com <attydupree@aol.com>
**Sent:** Thursday, February 2, 2023 11:31 PM
**To:** Amanda Hyland <ahyland@taylorenglish.com>
**Subject:** Re: The Gathering Spot

Hello Ms. Hyland.

I am sorry to just be getting to your email. It has been a week for the ages. I will reach out to my client after court tomorrow. Wait, no after I come back from a funeral that is after court. (3rd one this week) Anyway, I will reach out and do some checking on my own to see where we are. Give me just a minute please.

I am going home to get dinner so I can get ready for court in the morning. I will reach out when my personal battery is recharged.

Good night.

ddupree

-----Original Message-----
From: Amanda Hyland <ahyland@taylorenglish.com>

# EXHIBIT 2

**Paige McKinney**

| | |
|---|---|
| **From:** | Amanda Hyland |
| **Sent:** | Friday, May 12, 2023 2:45 PM |
| **To:** | AttyDupree@aol.com |
| **Cc:** | Rashmi Ahuja; Paige McKinney |
| **Subject:** | RE: Several Items related to The Gathering Spot |

Hi again,

Following up on the repayment schedule. If we do not hear from you, we will let the court know that we did not receive a proposal from you.

Thanks,
Amanda



**Amanda G. Hyland**
**Taylor English Duma LLP** | 1600 Parkwood Circle, Suite 200, Atlanta, GA 30339
P: 678.336.7247 | M: 404.304.0039 | ahyland@taylorenglish.com
[Website](#) | [LinkedIn](#) | [Blog](#)

**Ask Me About Our TED Tenet of the Week: See Feedback as a Gift.**

Click [here](#) to learn more about our TED Tenets.

 [Ranked in Chambers 2021](#)

This communication (together with all attachments) may contain privileged or confidential information, and its sender reserves and asserts all rights that may apply to it. If you are not the intended recipient or believe that you have received this communication in error, please do not print, copy, retransmit, disseminate or otherwise use the information. Also, please indicate to the sender that you have received this communication in error and delete the copy you received. If you have not executed an engagement letter with this firm, we do not represent you as your attorney and no duties are intended or created by this communication. Most legal rights have time limits, and this e-mail does not constitute advice on the application of limitation periods unless otherwise so expressly stated.

**From:** Amanda Hyland
**Sent:** Monday, May 8, 2023 6:49 PM
**To:** AttyDupree@aol.com
**Cc:** Rashmi Ahuja <rahuja@taylorenglish.com>; Paige McKinney <pmckinney@taylorenglish.com>
**Subject:** Several Items related to The Gathering Spot

Hello Mr. Dupree,

Pursuant to the Court's May 1, 2023, Report and Recommendation, I'm writing to confer with you on a proposed payment schedule for Defendant's payment of Plaintiff's attorneys' fees. I wanted to give you a few days to discuss this with your client, which I presume you now have done. Please let us know your suggestions for a payment timeline.

Also, please find the Plaintiff's initial disclosures and witness list attached.

Best,
Amanda



**Amanda G. Hyland**
**Taylor English Duma LLP** | 1600 Parkwood Circle, Suite 200, Atlanta, GA 30339
P: 678.336.7247 | M: 404.304.0039 | ahyland@taylorenglish.com
Website | LinkedIn | Blog

**Ask Me About Our TED Tenet of the Week: See Feedback as a Gift.**

Click here to learn more about our TED Tenets.

Ranked in Chambers 2021

This communication (together with all attachments) may contain privileged or confidential information, and its sender reserves and asserts all rights that may apply to it. If you are not the intended recipient or believe that you have received this communication in error, please do not print, copy, retransmit, disseminate or otherwise use the information. Also, please indicate to the sender that you have received this communication in error and delete the copy you received. If you have not executed an engagement letter with this firm, we do not represent you as your attorney and no duties are intended or created by this communication. Most legal rights have time limits, and this e-mail does not constitute advice on the application of limitation periods unless otherwise so expressly stated.

# EXHIBIT 3

## Paige McKinney

| | |
|---|---|
| **From:** | Paige McKinney |
| **Sent:** | Thursday, June 29, 2023 5:20 PM |
| **To:** | AttyDupree@aol.com |
| **Cc:** | Amanda Hyland |
| **Subject:** | The Gathering Spot |
| **Attachments:** | Joint Appendix (02603515xBE13C).DOCX |

Hello Mr. Dupree,

We are sending you the attached pursuant to Judicial Preference 5(H). If you are going to assert any additions, please let us know.

Thank you,
Paige



**Paige McKinney**
**Taylor English Duma LLP** | 1600 Parkwood Circle, Suite 200, Atlanta, GA 30339
P: 678.336.7171 | M: 270.625.5689 | pmckinney@taylorenglish.com
Website | LinkedIn

**Ask Me About Our TED Tenet of the Week: Be Honest but Compassionate.**

Click here to learn more about our TED Tenets.

This communication (together with all attachments) may contain privileged or confidential information, and its sender reserves and asserts all rights that may apply to it. If you are not the intended recipient or believe that you have received this communication in error, please do not print, copy, retransmit, disseminate or otherwise use the information. Also, please indicate to the sender that you have received this communication in error and delete the copy you received. If you have not executed an engagement letter with this firm, we do not represent you as your attorney and no duties are intended or created by this communication. Most legal rights have time limits, and this e-mail does not constitute advice on the application of limitation periods unless otherwise so expressly stated.